IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

BRENDA BORING PLAINTIFF

VS. CAUSE NO.: 3:26-CV-169-MPM-JMV

WINSTON EGGLESTON, individually, and in his capacity as Director of the Eggleston Artistic Trust, and as Secretary and Treasurer of the Eggleston Artistic Trust; WILLIAM EGGLESTON, JR., in his individual capacity; ROBERT GORDON, in his individual capacity; EGGLESTON ARTISTIC TRUST, an express trust, by and through its designated Trustee(s); DOUG AITKEN, in his individual capacity; JASON PIERCE (p/k/a J. Spaceman), in his individual capacity; JOHN COXON, in his individual capacity; TONY FOSTER, in his individual capacity; RUPERT CLERVAUX, in his individual capacity; MATTHEW JOHNSON, in his individual capacity and as President of Fat Possum Records, LLC; BRUCE WATSON, in his individual capacity and as General Manager of Fat Possum Records, LLC; and FAT POSSUM RECORDS, LLC, a domestic limited liability company DEFENDANTS

**BRIEF IN SUPPORT OF DEFENDANT DOUG AITKEN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

COMES NOW, Defendant Doug Aitken, and, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), files this Brief in Support of Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Failure to State a Claim Upon Which Relief Can Be Granted, as follows:

## I. PRELIMINARY STATEMENT

This Court lacks personal jurisdiction over Defendant Doug Aitken. Additionally, or in the alternative, the claims made against him are due to be dismissed as a matter of law. Personal jurisdiction is lacking because the pleadings do not show Aitken, a resident citizen of California,

has sufficient contacts with Mississippi to subject him to suit in the forum. Dismissal is warranted because the causes of action alleged against Aitken are barred by the statute of limitations and/or insufficiently pled; and because Brenda Boring was not a reasonably foreseeable plaintiff as a matter of law.

## II. STATEMENT OF THE ALLEGATIONS

The First Amended Complaint [12] ("FAC") alleges Aitken is a resident citizen of California, whose relevant conduct occurred at an arts festival in London, England. [12] at ¶7, 29. The allegation is that, in 2015, Aitken selected "the film *Stranded in Canton*, which was released commercially in 2005," for screening at an "arts festival hosted at the Barbican Centre in London," and "retained Defendant Jason Pierce (professionally known as J. Spaceman) to compose and execute a live musical score to accompany the film." *Id.* at ¶¶20, 29.

Aitken is not mentioned again until Count I, where it is alleged that he, Pierce, and the three other musicians Pierce assembled for the 2015 performance, used a segment of *Stranded in Canton* "containing the Plaintiff's unauthorized likeness … to promote multi-city concert events," sell tickets, and secure "appearance and performance fees" in 2024. *Id.* at ¶58. Aitken is then mentioned in Count II, where it is alleged that he conspired with all other defendants in 2024 to roll-out, distribute, market, and monetize "an entertainment product built entirely upon … Plaintiff's private childhood image." *Id.* at ¶62.

Aitken is not named in Count III or Count IV of the FAC, where Plaintiff relies on group pleading to direct allegations at "the Defendants" and "all Defendants." *Id.* at ¶¶66-78. These counts describe claims for unjust enrichment, quasi-contract, quantum meruit, conversion, and intentional infliction of emotional distress arising out an alleged appropriation of Plaintiff's likeness for commercial gain which, in Mississippi, is as an invasion of privacy theory.

## III. STANDARDS

**A. <u>Rule 12(b)(2) Standard</u>**

"A federal district court hearing a case in diversity may exercise personal jurisdiction to the extent permitted for a court under applicable law of the state in which the federal court sits." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) (citation omitted). In this case, Mississippi's long-arm statute sets forth the grounds upon which a nonresident is subject to personal jurisdiction in Mississippi. *See* Miss. Code § 13-3-57. These grounds include (a) making a contract with a Mississippi resident to be performed in whole or in part in Mississippi, (b) committing a tort while in Mississippi, and (c) doing business in Mississippi. *Id.*

A plaintiff must also show that a nonresident has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Internet Doorway, Inc. v. Parks*, 138 F.Supp.2d 773, 777-78 (S.D. Miss. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). This protects nonresidents from "being subject to the binding judgments of a forum with which the individual has established no meaningful 'contacts, ties, or relations'" *Id.* at 778 (quoting *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999)).

**B. <u>Rule 12(b)(6) Standard</u>**

When considering a Rule 12(b)(6) motion to dismiss, the tests to be applied are those set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Pursuant to these tests, a claim must (1) assert specific facts, not mere conclusions, and (2) be facially "plausible." *In re Oxford Expositions, LLC*, 466 B.R. 814, 816 (Bankr. N.D. Miss. 2011). These tests are only met where "the plaintiff pleads *factual* content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* at 817 (citing *Darby v. Southern Care, Inc.*, 2010 WL 4168671, at *1 (N.D. Miss. Oct. 19, 2010) (emphasis added)).

When utilizing these tests in this case, the Court should first "identify allegations that 'are no more than conclusions, [and thus] are not entitled to the assumption of truth,' and disregard them." *Id.* (citing *Iqbal,* 129 S.Ct. at 1950; *see also Ivy v. U.S. Dept. of Agriculture (FSA),* 2010 WL 2559885, at *4 (N.D. Miss. June 23, 2010) ("[C]onclusory allegations or legal conclusions dressed as factual conclusions will not circumvent a motion to dismiss.")). Next, considering only the well-pled factual allegations of the FAC, "the Court should determine whether such allegations 'plausibly suggest an entitlement to relief.'" *Id.*

## IV. ARGUMENT

### A. <u>Aitken is not subject to personal jurisdiction in Mississippi.</u>

A nonresident defendant's contacts with the forum may give rise to "general personal jurisdiction" or "specific personal jurisdiction." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 624-25 (5th Cir. 1999) (citing *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990)). If the contacts are "continuous and systematic," the Court "may exercise general personal jurisdiction." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). If not, the Court "may exercise specific personal jurisdiction" only if the claim against the nonresident arises out of his activities in the forum. *Id.* (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)).

When determining whether sufficient minimum contacts with the forum are alleged, the relevant factual allegations are those plainly directed to Aitken. General allegations directed to "the Defendants" or "all Defendants" are properly disregarded for purposes of this inquiry, unless a reference to Aitken can be clearly inferred. *See, e.g., Garcia v. Peterson*, 319 F. Supp.

3d 863, 893 (S.D. Tex. 2018) ("[I]t is improper for the plaintiffs to lump the MidCap entities together without demonstrating why the court may exercise jurisdiction over each entity.").

1. Aitken is not subject to general personal jurisdiction.

"[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S.Ct. 746, 760, 187 L. Ed. 2d 624 (2014). Where the defendant is an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* In this case, Aitken is alleged to be a citizen of California, and a resident of Venice, California. [12] at ¶7. It is not alleged that he has a residence or property in Mississippi, or "continuous and systematic" contacts with the forum. *Guidry*, 188 F.3d at 624. Accordingly, Plaintiff cannot rely on general personal jurisdiction.

2. Aitken is not subject to specific personal jurisdiction.

The allegations against Aitken in the FAC do not satisfy Mississippi's long-arm statute. It is not alleged that Aitken entered into a contract with a Mississippi resident, is doing business in Mississippi, or committed a tort in Mississippi, and it is not alleged that Plaintiff suffered any injury in Mississippi (she is a resident of Louisiana). *See* Miss. Code § 13-3-57. Likewise, the FAC provides no basis for finding that any of its claims arise out of Aitken's "purposeful contacts with the forum." *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Not "a single, substantial act directed toward the forum" by Aitken is alleged. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

"Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a prima facie case for specific jurisdiction has been presented." *Fielding*, 415 F.3d at 424 (citation omitted). In this case the only recognizable factual allegations

against Aitken, and therefore the only allegations which could support personal jurisdiction in the forum, are that he selected *Stranded in Canton* for screening at an arts festival in London more than a decade ago, and retained Pierce "to compose and execute a live musical score to accompany the film." [12] at ¶29. Although "tortious acts or omissions … within Oxford, Mississippi" are pled against Fat Possum Records, Matthew Johnson, and Bruce Watson, no acts or omissions attributable to Aitken are alleged to have occurred in Mississippi. *Id.* at ¶16.

Rather than Aitken, it is Fat Possum Records, Johnson, and Watson, who, along with Pierce and guitarist John Coxon, allegedly launched the album *Music for William Eggleston's Stranded in Canton* in late 2024 and exhibited *Stranded in Canton* as part of a promotional tour. *Id.* at ¶¶16, 31-48. Aitken is not named in these allegations, and the contacts other defendants have with Mississippi are irrelevant because "the relationship must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284, 134 S.Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014) (citing *Burger King Corp.*, 471 U.S. at 475); *see also Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 417 (The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.").

The FAC does not associate Aitken with the publication of *Stranded in Canton* on YouTube, or with the "materialization of the 2024 album release and accompanying concert tour." [12] at ¶¶34-39; 46-47. This conduct is plainly attributed to other defendants. *Id.* at ¶¶31-48. Even if the "multi-city concert events" mentioned in Paragraph 58 were somehow relevant to the allegations made against Aitken, the alleged tour stops are London, New York, Memphis, and Los Angeles. *Id.* at ¶¶43-45. No performance in Mississippi is identified, leaving the Court to guess at what personal contacts Aitken may have with the forum and why.

Count II alleges all twelve defendants conspired together, with each performing one or more unspecified overt acts. *Id.* at ¶¶62-63. This is a conclusory allegation that cannot support personal jurisdiction because each defendant's contacts must be analyzed individually. *Guidry*, 188 F.3d at 625 (personal jurisdiction must be established over each defendant individually, not simply as part of a conspiracy); *Garcia*, 319 F. Supp. 3d at 888 (personal jurisdiction over nonresident is not established solely by participation in alleged conspiracy); *Thomas v. Kadish*, 748 F.2d 276, 282 (5th Cir. 1984) (a general allegation of conspiracy, without statement of the facts constituting the conspiracy, is a legal conclusion.).

Aitken is a resident citizen of California, whose allegedly relevant conduct occurred overseas in 2015. No individual contacts between Aitken and Mississippi are pled, a conspiracy claim cannot provide the contacts due process requires, and Mississippi has little interest in a dispute brought by a Louisiana resident over the selection of a commercially available film for screening at an arts festival in London. Under these circumstances, exercising personal jurisdiction over Aitken would offend traditional notions of fair play and substantial justice.

**B. <u>The claims against Aitken are barred by the statute of limitations.</u>**

Mississippi law provides a one-year limitations period for certain intentional torts, Miss. Code § 15-1-35; and holds that actions for which no other period of limitations is prescribed must be commenced within three years after the cause of action accrued, and not after. Miss. Code §15-1-49(1). In Mississippi, a "cause of action accrues when it comes into existence as an enforceable claim, that is, when the right to sue becomes vested." *Anderson v. LaVere*, 136 So.3d 404, 411 (Miss. 2014). Here, the right to sue Aitken for his alleged conduct accrued in 2015.

Plaintiff's Count I and Count II claims, titled Commercial Misappropriation of the Right of Publicity, Appropriation of Identity, and Corporate and Civil Conspiracy to Violate the Right

of Privacy, are governed by a one-year limitations period. *Young v. Jackson*, 572 So.2d 378 (Miss. 1990) (noting invasion of privacy includes appropriation of likeness and unpermitted use). Plaintiff's Count III and Count IV claims for unjust enrichment, quasi-contract, quantum meruit, conversion, and intentional infliction of emotional distress are subject to a three-year limitations period. *See, Hughes v. Shipp*, 324 So.3d 286, 291 (Miss. 2021) (unjust enrichment and quasi-contract); *Rives v. Ishee*, 335 So.3d 1098, 1103 (Miss. Ct. App. 2022) (quantum meruit); *Anderson v. LaVere*, 136 So.3d 404, 411 (Miss. 2014) (conversion); *GEICO Casualty Co. v. Stapleton* 315 So.3d 464, 467-68 (Miss. 2021) (intentional infliction of emotional distress).

The right to sue Aitken under any of the theories identified in Counts I-IV of the FAC was extinguished long ago. The only specific conduct attributed to Aitken in the "Statement of Facts" section of the FAC is his selection of *Stranded in Canton* for screening at an arts festival in London in 2015, and his retention of Pierce to compose and perform a live musical score to accompany that screening. [12] at ¶29. Plaintiff did not commence this action until June 18, 2026, more than a decade after these events. As a result, none of Plaintiff's claims were timely filed, absent a legally sufficient basis for delayed accrual or tolling.

To this end, Plaintiff alleges there was no way for her to "have reasonably discovered through the exercise of due diligence" that *Stranded in Canton* was screened in London in 2015 with "live musical accompaniments." *Id.* at ¶30. Plaintiff claims she "first discovered these facts in June 2026 while independently researching the timeline of when Defendant J Spaceman and related entities began profiting from the film." *Id.* Because the 2015 screening and performance was "a localized, short-term arts festival event executed overseas," Plaintiff summarily concludes that it was "inherently undiscoverable" by her prior to June 2026. *Id.*

In Mississippi, a narrow discovery-rule exception exists in those "rare instances" where "because of the secretive or inherently undiscoverable nature of the publication the plaintiff did not know, or with reasonable diligence could not have discovered, that he had been defamed." *Staheli v. Smith*, 548 So.2d 1299, 1303 (Miss. 1989) (plaintiff making an intentional tort claim is expected to know an injury occurred except in limited instances of libel). This is not a libel or defamation case, and the Mississippi Supreme Court has declined to extend this exception to other intentional tort claims, including invasion of privacy. *Raddin v. Manchester Educ. Found., Inc.*, 175 So.3d 1243, 1249, 1251 (Miss. 2015) (discovery rule does not toll statute of limitations for invasion of privacy claims); *see also Candebat v. Flanagan*, 487 So.2d 207, 209-10 (Miss. 1986) (appropriation of another's identity is a form of invasion of privacy).

Since the discovery rule does not apply to invasion of privacy claims, and no latent injury is alleged, the contention that Aitken's conduct was "inherently undiscoverable" before Plaintiff began "researching" matters is misplaced. The question is not whether Plaintiff could "have reasonably discovered" facts to support her claims against Aitken prior to June 2026; the question is whether she timely filed suit within the applicable periods of limitation. Aitken's alleged conduct occurred in 2015, and the longest available statute of limitations is three years, therefore Plaintiff's claims are time-barred as a matter of law.

**C. <u>The claims against Aitken are insufficiently pled.</u>**

On October 14, 2026, Winston Eggleston, William Eggleston, Jr., and the Eggleston Artistic Trust filed a Motion to Dismiss [23] and Memorandum [24] arguing, among other things, that the FAC is due to be dismissed because it fails to state a claim for appropriation, and the other claims it attempts to plead also fail to state a claim upon which relief can be granted. Aitken adopts and joins in the Eggleston Defendants' arguments. *See, e.g., United States v.*

*Jordan*, No. 3:18-CR-67-CWR-LGI-2, 2021 WL 1030996, at *3 (S.D. Miss. Mar. 17, 2021) (joinder may be in the interest of judicial economy where "fact-specific challenges" are not made) (citing *United States v. Morgan*, 117 F.3d 849, 853 (5th Cir. 1997)).

That being said, because "[a] party has a duty to put its best foot forward … to spell out its arguments squarely and distinctly," *Id.* (citing *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990 (1st Cir. 1988)), Aitken offers the following arguments:

1. <u>The FAC fails to state a claim for appropriation of likeness for commercial gain.</u>

Count I alleges Plaintiff has suffered damages "[a]s a direct and proximate result of the Defendants' collective, unauthorized commercial misappropriation and exploitation of Plaintiff's identity and likeness …." [12] at ¶60. "In order to prevail on a claim based on appropriation of one's likeness for commercial gain, a plaintiff must show that the defendant: (1) appropriated his name or likeness, (2) without consent, (3) for use in a commercial enterprise." *Brasel v. Hair Co.*, 976 So.2d 390, 392 (Miss. Ct. App. 2008) (citing *Harbin v. Jennings*, 734 So.2d 269, 272 (¶10) (Miss. Ct. App. 1999)). Plaintiff fails to sufficiently allege these elements.

The first element requires Plaintiff to allege that Aitken appropriated her name or likeness. She does not allege her name appears in *Stranded in Canton*; and does not explain how partial images of her as an infant (as depicted in the screen shots incorporated into the FAC) are recognizable as her likeness. Furthermore, the fact that her likeness may appear in a film that was commercially available for a decade before Aitken selected it for screening, does not suggest that Aitken committed an actionable appropriation. The inquiry must necessarily focus on Aitken's own conduct and whether he appropriated Plaintiff's likeness for a commercial purpose.

The Restatement of Torts, on which the Mississippi Supreme Court has relied in similar cases, *see, e.g.*, *Candebat*, 487 So.2d at 209-12, explains that liability arises when a defendant

appropriates another's name or likeness for his own use or benefit. Restatement (Second) of Torts § 652C cmt. a. Although actionable appropriation often occurs through the commercial use of a person's likeness to advertise a business or product, the tort is not limited to advertising. *Id.* cmt. b. The tort is meant to protect the value associated with an individual's identity, including reputation, prestige, or other anything else a defendant might seek to exploit. *Id.* cmt. c. Accordingly, it is relevant here whether Aitken's particular use of *Stranded in Canton* amounted to an appropriation, for his own benefit, of any value associated with Plaintiff's identity. No factual allegation found in the FAC suggests this was the case.

The Fifth Circuit's decision in *Matthews v. Wozencraft*, 15 F.3d 432, 437-38 (5th Cir. 1994), provides persuasive guidance concerning the value protected by the appropriation tort. Applying Texas law and the Restatement, the court explained that the tort protects the value associated with an individual's identity rather than the facts of that individual's life, and that the relevant inquiry is whether the defendant exploited the plaintiff's identity for the value associated with it. *Id.* Because *Matthews* applied Texas law and involved a fictionalized account of the plaintiff's life, it does not control the outcome here. Its reasoning nevertheless supports examining the nature and purpose of the defendant's particular use rather than treating every commercial publication involving a person's likeness as an actionable appropriation.

The allegation against Aitken is that he selected a film for screening at an arts festival and retained Pierce to create and execute a live score for it. [12] at ¶29. Aitken did not film Plaintiff as an infant, incorporate her likeness into *Stranded in Canton*, or fail to obtain her consent before distributing her image—these acts and omissions are plainly attributed to others. *Id.* at ¶¶18-22. Thus, the only relevant question is whether it can fairly be said that Aitken's alleged conduct amounts to an appropriation of the value of Plaintiff's identity for his own use or benefit. This

question cannot be answered by simply alleging that the film depicts Plaintiff's likeness. More is required, and in this case, Plaintiff fails to make a sufficient showing with respect to Aitken.

Absent any allegation to the effect that Aitken knew or should have known the unnamed baby in the film was Brenda Boring, knew or should have known that she appeared in the film "without consent," and that he received some specific financial benefit from the 2015 screening of *Stranded in Canton*, the elements required to support a claim for appropriation of likeness for commercial gain are not present. This claim is insufficiently pled as a matter of law.

2. The FAC fails to state a claim for corporate and civil conspiracy to violate the right of privacy, unjust enrichment, quasi-contract, quantum meruit, conversion of proprietary personal attributes, or intentional infliction of emotional distress.

Count II alleges Aitken conspired with all other defendants to distribute, market, and monetize "an entertainment product built entirely upon … Plaintiff's private childhood image" in 2024. *Id.* at ¶62. Though couched as a "right of privacy" claim, appropriation of likeness for commercial gain is the only privacy-based theory available to Plaintiff under the facts. *Candebat*, 487 So.2d at 209 (identifying the four theories underlying a cause of action for invasion of privacy). That claim fails for the reasons set forth above; therefore this claim fails as well.

Additionally, the Count II claim fails because the FAC does not sufficiently plead the elements of a civil conspiracy, which are: (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose, or a lawful purpose unlawfully, and (3) damages. *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So.2d 777, 786 (Miss. 2004). These elements are not sufficiently pled because the FAC does not allege a conspiracy existed in 2015 or that Aitken entered into an agreement with any co-conspirator related to the 2024 album release and tour.

Without naming Aitken, Count III alleges "the Defendants" were unjustly enriched "[b]y commercially mass-producing, packaging, broadcasting, streaming, and exhibiting" Plaintiff's

likeness in connection with the 2024 album release and tour. [12] at ¶67. As a result, Plaintiff claims "equity, quantum meruit, and quasi-contract, as well as common-law principles governing the conversion of proprietary personal attributes" support her demand for damages. *Id.* at ¶71.

"Quasi-contract" is nearly identical to unjust enrichment. Indeed, "the terms 'unjust enrichment' and 'restitution' are modern designation for the doctrine of 'quasi-contracts' …." *Magnolia Fed. Sav. & Loan Ass'n v. Randal Craft Realty Co.*, 342 So.2d 1308, 1311-12 (Miss. 1977). "A quasi-contract, or constructive contract, is based on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another," while "the basis for an action for 'unjust enrichment' lies in a promise, which is implied in law, that one will pay to the person entitled thereto which in equity and good conscience is his." *Id.*

Plaintiff cannot state a claim for quasi-contract or unjust enrichment against Aitken because her underlying invasion of privacy claim (i.e., appropriation of likeness for commercial gain) is insufficiently pled as a matter of law. Additionally, the FAC does not allege that Aitken received any specific financial benefit from the 2015 screening of *Stranded in Canton*, or from his retention of Pierce to create and perform a live musical score during that screening. Likewise, it provides no factual foundation upon which the Court could conclude that an implied contract or other legal obligation existed between Aitken and Plaintiff at any relevant time. As a result, these claims are insufficiently pled as a matter of law.

Plaintiff's claim for quantum meruit suffers the same fate. Like quasi-contract and unjust enrichment, quantum meruit "applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another." *Ace Pipe Cleaning, Inc. v. Hemphill*

*Const. Co.*, 134 So.3d 799, 806 (Miss. Ct. App. 2014) (citing *In re Estate of Fitzner*, 881 So.2d 164, 173 (Miss. 2003). The elements of quantum meruit are:

> (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified [the] person sought to be charged that [the] plaintiff, in performing such services, was expected to be paid by [the] person sought to be charged.

*Id.* at 805-06. These elements are not sufficiently pled because, among other reasons, the FAC does not describe any circumstances under which it would be reasonable for Aitken to believe Plaintiff, who allegedly appears as an infant in a film that has been commercially available since 2005, would expect to receive payment from him in connection with a screening in 2015.

Finally, Plaintiff's claim for "conversion of proprietary personal attributes" cannot withstand scrutiny because only tangible or identifiable personal property can be converted, not intangible personal attributes. *See, e.g., McGee v. Comprehensive Radiology Servs., PLLC*, 340 So.3d 328, 333 (Miss. 2022). Rather than a conversion claim, this theory is better described as the tort of invasion of privacy by appropriation of likeness for commercial gain. As already addressed above, Plaintiff has failed to sufficiently plead any such claim as a matter of law.

Without naming Aitken, Count IV alleges "the Defendants" have persisted in their "commercial exhibition and profit-driven exploitation" of Plaintiff's likeness since 2024. [12] at ¶74. The FAC further alleges "all Defendants" received notice that they were causing Plaintiff to suffer extreme emotional distress "via the January 23, 2026 pre-suit cease-and-desist" letter she served on the Eggleston Defendants. *Id.* at ¶25. Plaintiff's alleged notice to some defendants cannot be imputed to "all Defendants," and certainly not to Aitken who is not alleged to have

committed any relevant conduct since 2015. Moreover, the FAC provides no factual basis upon which the Court could conclude that Aitken intended to harm Plaintiff at any time.

The standard for intentional infliction of emotional distress "is very high and focuses on the defendant's conduct and not the plaintiff's emotional condition." *Wilkerson by & Through Reel v. Allred*, 407 So.3d 218, 227 (Miss. Ct. App. 2024) (citations omitted). To be actionable, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citations omitted). Certainly this standard cannot be met here, where the allegations against Aitken relate to the public screening of a commercially available film. There is simply nothing outrageous, extreme, indecent, atrocious, or intolerable about selecting a decade-old film for screening at an arts festival and securing a musician to play along.

3. <u>Group pleading fails to satisfy the requirement of notice pleading.</u>

As discussed in the personal jurisdiction argument above, the relevant factual allegations against Aitken are those plainly directed to him. General allegations directed to "the Defendants" or "all Defendants" are properly disregarded, not only when determining whether sufficient minimum contacts to support personal jurisdiction exist, but when determining whether the FAC states a claim upon which relief can be granted. *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 241 (5th Cir. 2021) ("Where a complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading."). When the well-pled factual allegations against Aitken are isolated and legal conclusions and group pleading are disregarded, it is apparent the FAC states no claim against Aitken upon which relief can be granted.

**D. Brenda Boring was not a reasonably foreseeable plaintiff.**

To state a claim against Aitken for any sort of tortious conduct, including the tort of appropriation of likeness for commercial gain, Brenda Boring must first show that she was a reasonably foreseeable plaintiff to whom Aitken owed a duty. "Foreseeability, as relates to duty, is a determination as to whether the plaintiff is a reasonably foreseeable plaintiff." *Smith v. Minier*, 380 So.3d 889, 893 (Miss. 2024) (citing *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928)). "This is a legal question." *Id.* "After it is determined that the plaintiff is a reasonably forseeable plaintiff, the analysis turns to the question of whether the breach of duty is the cause of the plaintiff's injuries." *Id.*

Pursuant to the foreseeability doctrine espoused in *Palsgraf*, and recognized by the Mississippi Supreme Court in *Smith*, the legal question to be determined by the Court at this time is whether Aitken should have reasonably anticipated that some injury would probably result to Boring as a result of his alleged conduct:

> The rule is firmly established in this state, as in nearly all the common law states, that in order that a person who does a particular act which results in injury to another shall be liable therefor, the act must be of such character, and done in a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom, but that the actor is not bound to a prevision or anticipation which would include an unusual, improbable, or extraordinary occurrence, although such happening is within the range of possibilities.

*Rolison v. City of Meridian*, 691 So.2d 440, 444 (Miss. 1997) (quoting *Mauney v. Gulf Refining Co.*, 193 Miss. 421, 9 So.2d 780, 780-81 (1942)).

In other words, the question is whether Aitken should have reasonably anticipated that some injury to Boring would likely result from his 2015 screening of *Stranded in Canton*, or from his retention of Pierce to create and perform a live musical score during that screening. The

film is allegedly 77 minutes long, became commercially available in 2005, and depicts Boring as an infant in 1974. [12] at ¶¶18-22. Under these facts, Aitken submits, as a matter of law, Boring was not a "reasonably foreseeable plaintiff" to whom he owed any duty. *Smith*, 380 So.3d at 893.

The allegation that Boring was injured as a result of Aitken's conduct in 2015 is an "unusual, improbable, or extraordinary occurrence," which no person in Aitken's position should have reasonably anticipated. *Rolison*, 691 So.2d at 444. This is the case even if it was arguably "within the range of possibilities" that the unnamed infant appearing in the film had not consented to the appropriation of her likeness for commercial gain. Since Boring was not a reasonably foreseeable plaintiff in 2015 (more than a decade before she allegedly served her pre-suit cease-and-desist letter on the Eggleston Defendants), Aitken must be dismissed.

## V. CONCLUSION

There is no thread in the "Statement of Facts" that connects Aitken to any relevant conduct within the last decade, or within the State of Mississippi; and nothing to suggest that he could have reasonably foreseen any harm to Plaintiff as a result of his alleged conduct in 2015. The arguments made herein support Aitken's dismissal pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) because the pleadings do not show Aitken, a resident citizen of California, has sufficient contacts with Mississippi to subject him to suit in the forum; because the causes of action alleged against Aitken are barred by the statute of limitations and/or insufficiently pled; and because Brenda Boring was not a reasonably foreseeable plaintiff as a matter of law.

WHEREFORE, PREMISES CONSIDERED, Defendant Doug Aitken respectfully asks the Court to grant the relief requested in his Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Failure to State a Claim Upon Which Relief Can Be Granted. Aitken further requests any additional relief the Court may find warranted in the premises, general or specific.

Respectfully submitted,

DOUG AITKEN

*/s/ Lawrence J. Tucker, Jr.*
LAWRENCE J. TUCKER, JR., MSB # 100869
Hickman, Goza & Spragins, PLLC
Post Office Drawer 668
Oxford, MS 38655-0668
(662) 234-4000 (telephone)
(662) 234-2000 (facsimile)
ltucker@hickmanlaw.com

**CERTIFICATE OF SERVICE**

I, Lawrence J. Tucker, Jr. of Hickman, Goza & Spragins, PLLC, Oxford, Mississippi, do hereby certify that I have, this date, filed the above with the Court via the ECF system, which electronically delivered a copy to all counsel of record, including the following:

John R. Branson
JWL International
311 Poplar View Lane West
Suite No. 2
Collierville, TN 38017
(901) 569-1175
jrb@jwlinternational.com

And a copy has been mailed to the following *pro se* party:

Brenda Boring
3901 W. Esplanade Ave.
#640174
Kenner, LA 70064

DATE: October 20, 2026

*/s/ Lawrence J. Tucker, Jr.*
LAWRENCE J. TUCKER, JR.