IN THE UNITED STATES DISTRICT COURT FOR NORTHERN DISTRICT OF MISSISSIPPI OXFORD DIVISION

RECEIVED
OCT 26 2026
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI

BRENDA BORING,

Plaintiff,

v.

Civil Action No.: 3:26-cv-00169-MPM-JMV

WINSTON EGGLESTON, et al.,

Defendants.

MEMORANDUM OF AUTHORITIES IN OPPOSITION TO DEFENDANT DOUG AITKEN'S MOTION TO DISMISS (DOC. 29)

COMES NOW Plaintiff Brenda Jane Paixao a/k/a Brenda Boring, pro se, and submits this Memorandum of Authorities in Opposition to Defendant Doug Aitken's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Failure to State a Claim (Doc. 29).

I. INTRODUCTION AND STATEMENT OF OPERATIVE FACTS

This action arises from the unauthorized commercial exploitation and synchronization of private, unreleased footage depicting Plaintiff as an infant nursing at her mother's breast in a secluded residential home. The footage originates from video recordings captured in 1974 by William Eggleston. At no time did Plaintiff or her mother execute a model release, consent agreement, or copyright assignment permitting commercial use of Plaintiff's identity or intimate bodily depictions.

In July 2015, Defendant Doug Aitken, an internationally recognized contemporary artist and multimedia creator, organized and directed a 30-day multi-disciplinary arts festival titled "Station to Station: A 30-Day Happening" hosted at the Barbican Centre in London, England. In his capacity as the artistic director, organizer, and commissioner of this multi-artist project, Defendant Aitken selected William Eggleston's unreleased work Stranded in Canton for public presentation. Defendant Aitken affirmatively commissioned, retained, and directed Defendant Jason Pierce (professionally known as J. Spaceman of the band Spiritualized) to compose and execute an original synchronized live musical score specifically set to the film. That synchronized musical composition directly highlighted, framed, and synchronized with Plaintiff's unconsented, intimate infant depiction.

Plaintiff affirmatively sues over this July 2015 exhibition and score creation, which constituted an unauthorized, intentional invasion of her private bodily depiction and commercial likeness. Far from remaining an isolated event, Defendant Aitken's commissioning of this synchronized score served as the foundational genesis and sonic core of an active, continuing commercial venture. The synchronized master compositions created at Aitken's direction were preserved, licensed, and funneled directly into Oxford, Mississippi, where domestic co-conspirator Fat Possum Records, LLC has its principal headquarters.

On November 1, 2024, Fat Possum Records, LLC, in coordination with the performing musical defendants and the Eggleston Defendants, released the commercial studio album titled "Music for William Eggleston's Stranded in Canton." Track 6 of that album, titled "Mother's milk," was directly synchronized with the intimate nursing depiction of Plaintiff. Track 6 was mass-manufactured onto physical vinyl and compact discs, distributed to global streaming platforms (including official Spiritualized YouTube broadcasts, Spotify, and Apple Music), and

projected during synchronized multi-city concert tour events across London (Barbican Centre and EartH Hackney), New York (Le Poisson Rouge), Memphis (Crosstown Theater), and Los Angeles (Hollywood Forever Cemetery) continuing into 2025 and 2026. Defendants continue to commercially stream Track 6 and derive enterprise revenues from Plaintiff's likeness without consent.

On October 20, 2026, Defendant Aitken filed his Motion to Dismiss (Doc. 29), raising personal jurisdiction defenses under Rule 12(b)(2), asserting expiration of the statute of limitations under Rule 12(b)(6), challenging the sufficiency of the substantive claims, and invoking negligence foreseeability doctrines under Palsgraf. As demonstrated below, each defense fails under controlling Mississippi and Fifth Circuit law.

## II. THIS COURT PROPERLY EXERCISES SPECIFIC PERSONAL JURISDICTION OVER DEFENDANT AITKEN UNDER FED. R. CIV. P. 12(b)(2)

As a threshold matter, Plaintiff does not assert general "all-purpose" personal jurisdiction over Defendant Aitken. Under Mississippi law, general and specific personal jurisdiction are separate and independent inquiries that must be evaluated on their own terms. K&C Logistics, LLC v. Old Dominion Freight Line, Inc., 374 So. 3d 515, 521 (Miss. 2023). A nonresident defendant's out-of-state domicile does not preclude specific personal jurisdiction where the defendant purposefully directed activities connected to the forum through a broader commercial enterprise. Farani v. File, 565 F. Supp. 3d 804 (S.D. Miss. 2021). Defendant Aitken's extensive reliance on Daimler AG v. Bauman is therefore inapposite. This Court properly exercises specific personal jurisdiction under Mississippi's Long-Arm Statute and Fourteenth Amendment Due Process.

A. The Mississippi Long-Arm Statute Is Satisfied Under the Tort Prong Mississippi's Long-Arm Statute, Miss. Code Ann. § 13-3-57, confers personal jurisdiction over any nonresident who commits a tort "in whole or in part in this state against a resident or nonresident of this state." Under controlling Fifth Circuit and Mississippi law, "the tort is committed in Mississippi if any of its elements—or any part of an injury resulting from the tort—occurs in Mississippi." ITL Int'l, Inc. v. Constenla, S.A., 669 F.3d 493, 498 (5th Cir. 2012); Smith v. Temco, Inc., 252 So. 2d 212, 216 (Miss. 1971).

Physical presence within Mississippi is not required. A nonresident defendant need not physically enter Mississippi to commit a tort there under § 13-3-57 if an element or consequence of the tortious enterprise connects to the forum. Barefield Workplace Solutions, Inc. v. Miller's of Columbia, Inc., 2018 WL 1770477 (S.D. Miss. 2018). Furthermore, placing tortious commercial media into digital and distribution streams that are broadcast and accessible within Mississippi satisfies the tort prong under a prima facie standard. The Retail Coach, LLC v. r360, LLC, 2017 WL 3994799 (N.D. Miss. Sept. 8, 2017); Lofton v. Turbine Design, Inc., 100 F. Supp. 2d 404, 411 (N.D. Miss. 2000).

Moreover, Plaintiff explicitly pleads a civil conspiracy between Defendant Aitken, the musical performing defendants, the Eggleston Defendants, and Fat Possum Records, LLC (Operative Complaint, Count II). Under established Fifth Circuit conspiracy jurisdiction doctrine, overt acts committed within Mississippi by one co-conspirator in furtherance of the common design are legally imputed to all nonresident co-conspirators for personal jurisdiction purposes. Guidry v. U.S. Tobacco Co., 188 F.3d 619, 625 (5th Cir. 1999). Here, domestic co-conspirator Fat Possum Records, LLC, from its headquarters in Oxford, Mississippi, performed substantial operational overt acts: executive administration, audio mastering, synchronization licensing, album

manufacturing, and managing global digital streaming of Track 6 ("Mother's milk"). These Mississippi overt acts are legally attributed to Defendant Aitken under Guidry.

B. The Exercise of Jurisdiction Comports with Fourteenth Amendment Due Process Due Process requires that a nonresident defendant purposefully avail himself of the privileges of conducting activities in the forum and that the litigation arise out of or relate to those contacts. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Where a defendant participates in placing proprietary assets into commercial distribution pipelines through an authorized distributor, the defendant purposefully avails himself of the forum and can reasonably anticipate being haled into court where that enterprise operates. Ronaldo Designer Jewelry, Inc. v. Anne Ryan, LLC, 74 F. Supp. 3d 783 (S.D. Miss. 2015).

Finally, exercising jurisdiction over Defendant Aitken comports with traditional notions of fair play and substantial justice. Under controlling Fifth Circuit and Mississippi law, the fair play inquiry evaluates the burden on the defendant, the forum state's interest, the plaintiff's interest in effective relief, and the judicial system's interest in efficient resolution. Miss. Interstate Exp., Inc. v. Transpo, Inc., 681 F.2d 1003, 1007–08 (5th Cir. 1982); Adara Networks, Inc. v. Langston, 301 So. 3d 618, 627–28 (Miss. 2020). Mississippi maintains a powerful interest in regulating tortious conduct executed through its domestic corporate entities in Oxford. Dismissing Defendant Aitken while retaining jurisdiction over his Mississippi co-defendants would artificially fragment litigation arising from a single, coordinated enterprise.

III. PLAINTIFF'S CLAIMS ARE TIMELY UNDER MISSISSIPPI LAW

Defendant Aitken's contention that all claims are barred by the one-year statute (Miss. Code Ann. § 15-1-35) or three-year statute (§ 15-1-49(1)) relies on the false premise that Plaintiff's

claims are time-barred because the original screening took place in 2015. This defense fails under the discovery rule, the continuing tort doctrine, and republication rules.

A. The 2015 Screening and Continuing Commercial Exploitation Are Fully Actionable and Timely Plaintiff explicitly sues Defendant Aitken for his initial unlawful misappropriation and synchronization of her intimate infant likeness at the July 2015 Barbican Centre exhibition in London, England. At no time has Plaintiff abandoned or conceded that claim. Under Mississippi law applied in this District, the discovery rule tolls the statute of limitations where an act or publication is inherently undiscoverable through ordinary diligence, or where it is unrealistic to expect a layperson to perceive the injury at the time of occurrence. River Oaks Convalescent Ctr., Inc. v. Coahoma Cnty., 280 F. Supp. 2d 565, 569 (N.D. Miss. 2003); McKlemurry v. Thomas, 2011 WL 1335323, at *3 (S.D. Miss. 2011). A short-term arts festival performance executed overseas in London, England, with zero domestic notice to Plaintiff, represents precisely the rare circumstance warranting tolling until Plaintiff's investigative discovery in June 2026.

Furthermore, Defendant Aitken's 2015 screening was not a closed, completed historical event whose effects merely lingered. Under established Mississippi jurisprudence, where a tort involves repeated wrongful acts forming a continuous course of conduct, "the limitations period runs from the date of the last wrongful act, and each day creates a separate cause of action." Pierce v. Cook, 992 So. 2d 612, 619 (Miss. 2008). To constitute a continuing tort under Fifth Circuit law, a complaint must allege continual unlawful acts rather than merely continuing ill effects. Hazzard v. Chase Manhattan Corp., 275 F.3d 1078, 1080–81 (5th Cir. 2001). Under Mississippi law applied in this District, the limitations period for a continuing tort runs from the

date of the last injury or when the wrongful conduct ends, with each repeated act resetting the limitations clock. Walker v. Epps, 587 F. Supp. 2d 763, 768 (N.D. Miss. 2008).

Here, Defendant Aitken's commissioning of an unconsented live score set to Plaintiff's breastfeeding depiction initiated a continuous chain of exploitation. That synchronized asset was preserved, licensed, and channeled directly into an active commercial enterprise launched on November 1, 2024, through Oxford-based Fat Possum Records, LLC. Track 6 ("Mother's milk") was mass-manufactured onto vinyl and compact discs, broadcast on multi-city concert tours, and continuously streamed on YouTube and global streaming services through 2025 and 2026. Each ongoing digital transmission and commercial monetization constitutes a discrete, actionable tort, rendering Plaintiff's action timely as to the entire enterprise.

B. Reissues and Digital Rebroadcasts Restart the Limitations Period Under Northern District of Mississippi law, subsequent editions, reissues, or rebroadcasts of media trigger an entirely new cause of action and restart the limitations clock. Lane v. Strang Commc'ns Co., 297 F. Supp. 2d 897, 899–900 (N.D. Miss. 2003). The November 1, 2024 worldwide commercial album release, music video streaming, and concert tour projections constitute distinct, actionable publications well within any applicable statutory period.

Defendant Aitken's reliance on Staheli v. Smith, 548 So. 2d 1299 (Miss. 1989), and Raddin v. Manchester Educ. Found., Inc., 175 So. 3d 1243 (Miss. 2015), is inapposite. Those cases involved localized, static domestic personnel files. Staheli held that a plaintiff who could not have discovered an out-of-reach wrong cannot be accused of sleeping on their rights. Because Plaintiff had no access or notice regarding the foreign 2015 performance, and because ongoing

actionable distributions occurred through 2024, 2025, and 2026, dismissal on limitations grounds is precluded.

Finally, under Federal Rule of Civil Procedure 8(c), the statute of limitations is an affirmative defense that cannot support dismissal under Rule 12(b)(6) unless the face of the complaint demonstrates beyond doubt that the claim is barred with no possibility of continuing injury or tolling.

## IV. PLAINTIFF SUFFICIENTLY PLEADS EACH CAUSE OF ACTION UNDER RULE 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint need only plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Because Plaintiff proceeds pro se, her pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).

A. Defendant Aitken's Procedural Attempt at Blanket Joinder Fails As a threshold matter, Defendant Aitken's summary attempt to "adopt and join in" the Eggleston Defendants' Motion to Dismiss (Doc. 29 at 9–10) is procedurally deficient. Under controlling Fifth Circuit and Mississippi practice, a party seeking to adopt another defendant's motion has an affirmative duty to "spell out its arguments squarely and distinctly" rather than relying on cursory references to motions involving distinct factual roles. United States v. Jordan, 2021 WL 1030996, at *3 (S.D. Miss. 2021) (citing United States v. Morgan, 117 F.3d 849, 853 (5th Cir. 1997)).

Collective treatment in dispositive motions is inappropriate where the record demonstrates that defendants did not engage in unified acts as indistinguishable entities. Mize v. Morgan & Morgan, P.A., 2023 WL 3993809 (N.D. Miss. 2023). The Eggleston Defendants are copyright holders and historical licensors; Defendant Aitken is the initiating artist, director, and project organizer who affirmatively commissioned the live synchronized musical score. Arguments tailored to copyright ownership cannot be imported wholesale without independent analysis of his distinct conduct.

B. Count I: Commercial Misappropriation of Likeness Under Mississippi common law, commercial misappropriation requires showing that the defendant: (1) appropriated plaintiff's name or likeness, (2) without consent, (3) for use in a commercial enterprise. Brasel v. Hair Co., 976 So. 2d 390, 392 (Miss. Ct. App. 2008); Candebat v. Flanagan, 487 So. 2d 207, 209 (Miss. 1986).

Defendant Aitken's argument that Plaintiff failed to plead an actionable likeness or direct financial benefit (Doc. 29 at 10–12) is foreclosed by controlling Northern District of Mississippi and Fifth Circuit law.

First, the tort does not require that a plaintiff's name appear in print on screen, nor is identifiability limited to an unobscured adult face. In Johnston v. One America Productions, Inc., 2007 WL 2903218 (N.D. Miss. Oct. 2, 2007), this District held that Mississippi misappropriation law under Restatement (Second) of Torts § 652C is not confined to commercial advertising and declined to adopt the restrictive Texas-specific standard of Matthews v. Wozencraft, 15 F.3d 432 (5th Cir. 1994). A plaintiff is legally identifiable if a reasonable viewer can discern that the plaintiff is depicted, considering the total context of the defendants' use. As J. Thomas McCarthy

explains in The Rights of Publicity & Privacy § 3:17, identifiability encompasses recognizable context, bodily depiction, and spoken audio. Within the restored 77-minute film Stranded in Canton, at timestamp 17:33, Plaintiff's mother's spoken voice explicitly refers to the infant on camera by Plaintiff's personal name ("Jane") while being breastfed. That identical infant and mother are captured in the intimate breastfeeding scene at timestamps 41:04, 41:09, and 41:48, which Defendants specifically isolated, titled, synchronized, and marketed as Track 6 ("Mother's milk").

This exact audio-visual sequence was commercially broadcast and distributed across global digital platforms—including the official Spiritualized YouTube channel, Spotify, and Apple Music—pressed onto commercial vinyl and CD formats by Oxford-based Fat Possum Records, LLC, and projected during multi-city live concert tours at the Barbican Centre and EartH Hackney in London, Le Poisson Rouge in New York, Crosstown Theater in Memphis, and the Hollywood Forever Cemetery in Los Angeles. Resolving whether this broadcast identifiability reaches a reasonable audience is an intensely factual question that cannot be decided against Plaintiff on a Rule 12(b)(6) motion.

Second, a plaintiff need only plausibly allege that her identity was used in a commercial enterprise, and is not required to plead a specific dollar figure received by the defendant. Jones v. Phycon, Inc., 2022 WL 17091218 (N.D. Miss. Nov. 21, 2022). Furthermore, under § 652C, an actionable benefit need not take the form of direct cash advertising; extracting artistic prestige, professional stature, and promotional draw for an exhibition readily satisfies the benefit element at the pleading stage. Meadows v. Hartford Life Ins. Co., 492 F.3d 634, 638–39 (5th Cir. 2007).

Finally, under Mississippi law, an infant is legally incapable of consenting to the commercial exploitation of her likeness. Harbin v. Jennings, 734 So. 2d 269 (Miss. Ct. App. 1999). Neither Plaintiff nor her late mother ever executed an entertainment release. Count I states a valid claim.

C. Count II: Corporate and Civil Conspiracy Under Mississippi law, the elements of a civil conspiracy are: (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, and (4) resulting damages. Griffin v. HSBC Mortg. Servs., Inc., 2016 WL 6892117, at *4 (N.D. Miss. Nov. 22, 2016); Gallagher Bassett Servs., Inc. v. Jeffcoat, 887 So. 2d 777, 786 (Miss. 2004).

The agreement element need not be proven by direct evidence of an express written contract executed at a single point in time; it may be tacitly inferred from a chronological course of coordinated conduct. Higginbotham Ins. Agency, Inc. v. Smith, Slip Copy (S.D. Miss. 2026); Midwest Feeders, Inc. v. Bank of Franklin, 886 F.3d 507, 519 (5th Cir. 2018). Conspiracies are rarely proven by explicit written compacts, and the agreement need not extend to all details of the scheme. Midwest Feeders, 886 F.3d at 519.

Moreover, a civil conspiracy claim does not require that every co-conspirator personally execute each element of the underlying tort. Viable underlying tort claims against any co-conspirator provide a sufficient predicate to maintain the conspiracy count against all participating co-conspirators. Midwest Feeders, Inc. v. Bank of Franklin, 114 F. Supp. 3d 419, 435 (S.D. Miss. 2015); Walker v. Williamson, 131 F. Supp. 3d 580 (S.D. Miss. 2015).

Defendant Aitken performed the foundational overt act: commissioning and directing Defendant Pierce to create the synchronized live musical score over Plaintiff's intimate, unconsented infant depiction (Doc. 12, ¶¶ 29–30, 62–64). That synchronized asset was preserved, licensed, and

funneled directly into Oxford-based Fat Possum Records, LLC to launch the 2024 album release, Track 6 ("Mother's milk"), and multi-city tour exhibitions (Id. ¶¶ 31–48). Aitken's collaboration served as the genesis of the broader commercial enterprise, stating a plausible conspiracy claim.

D. Count III: Unjust Enrichment, Quantum Meruit, and Equitable Restitution Under Mississippi law, "unjust enrichment is recognized as an independent cause of action and does not require a separately stated cause of action to be viable." UNO MAS, INC. v. Ruan Transport Corp., Slip Copy (N.D. Miss. 2026); Davis v. ING Fin. Advisers, LLC, 2006 WL 8439976 (S.D. Miss. 2006). Unjust enrichment is grounded in quasi-contract and equity; it does not depend on the survival of an underlying intentional tort claim.

Unjust enrichment applies precisely where no legal contract exists, resting on an obligation implied in law that one will pay what in good conscience belongs to another. Montgomery v. CitiMortgage, Inc., 955 F. Supp. 2d 640, 656 (S.D. Miss. 2013). While quantum meruit often looks to a claimant's expectation of compensation, unjust enrichment is an independent restitutionary remedy that requires no pre-existing business dealing or expectation of payment. Noone v. Ohio Nat'l Life Ins. Co., 2021 WL 3855523, at *5 (S.D. Miss. 2021). A plaintiff is not required to plead the exact dollar amount received by the defendant. Ovella v. B & C Const. & Equip., LLC, 2011 WL 4551121 (S.D. Miss. 2011).

Under Fifth Circuit law, an individual's likeness constitutes a protected property interest capable of supporting restitutionary recovery. King v. Ames, 179 F.3d 370 (5th Cir. 1999). While purely intangible concepts are generally not subject to conversion, intangible rights merged into a physical medium—such as master recordings, videotapes, vinyl records, and compact discs—are subject to conversion. In re Community Home Fin. Servs., Inc., 583 B.R. 1, 10–11 (Bankr. S.D.

Miss. 2018). Under Rule 8(a), a complaint is judged by its factual allegations, not by precise legal labels, and the underlying commercial exploitation remains fully actionable. Johnston v. One America Productions, Inc., 2007 WL 2903218 (N.D. Miss. Oct. 2, 2007).

E. Count IV: Intentional Infliction of Emotional Distress Under Mississippi law, whether conduct meets the threshold of intentional infliction of emotional distress cannot be evaluated in an artificial vacuum by severing a single act from its overall context. Rather, courts evaluate the totality of alleged conduct, and where acts taken together reflect a coordinated course of unpermitted commercial intrusion, the complaint readily survives dismissal. Leech v. Mississippi College, 2023 WL 6162688 (S.D. Miss. 2023). Because determining what is outrageous in a civilized community is an intensely fact-specific inquiry, it is uniquely unsuited for resolution on a Rule 12(b)(6) motion prior to discovery. Rich v. Sheppard, 2017 WL 1215718, at *4 (S.D. Miss. 2017).

Defendant Aitken commissioned and directed the synchronized score that highlighted, set tempo to, and framed Plaintiff's unconsented infant depiction, initiating the creative pipeline that Oxford-based Fat Possum Records, LLC monetized as Track 6 ("Mother's milk"). When an actor participates in converting an intimate, unconsented breastfeeding video into a globally marketed commercial asset, reasonable minds can easily conclude that such conduct evokes genuine revulsion and exceeds the bounds of decency. Ray v. Dufresne Spencer Grp., LLC, 2019 WL 2256740 (N.D. Miss. May 24, 2019). Furthermore, Plaintiff explicitly pleads medically cognizable severe emotional distress: clinically diagnosed Post-Traumatic Stress Disorder (PTSD), trauma-induced insomnia, and ongoing daily psychiatric prescription treatment.

F. Plaintiff Was a Foreseeable Victim of Intentional Commercial Exploitation Defendant Aitken seeks dismissal by asserting that Plaintiff was "not a reasonably foreseeable plaintiff" under the negligence doctrine of Palsgraf v. Long Island R.R. Co., 248 N.Y. 339 (1928), Smith v. Minier, 380 So. 3d 889 (Miss. 2024), and Rolison v. City of Meridian, 691 So. 2d 440 (Miss. 1997) (Doc. 29 at 16–17). This defense fundamentally conflates accidental negligence with intentional tort liability.

Palsgraf, Smith v. Minier, and Rolison govern duty, breach, and proximate cause in accidental negligence actions. They have no application to intentional torts, invasion of privacy, or civil conspiracy. Under Mississippi intentional tort law, an actor who intentionally invades a protected personal or proprietary interest is legally accountable for the direct and natural consequences of that conduct. In intentional misappropriation, duty does not depend on an accidental relationship; it arises from the protected legal right of every citizen to be free from unconsented commercial exploitation under Restatement (Second) of Torts § 652C.

Creative professionals who participate in commercializing works depicting identifiable individuals are on reasonable legal notice that those individuals may assert claims, and cannot disclaim foreseeability by pointing to third-party distributors or downstream intermediaries. Mitchell v. Random House, Inc., 703 F. Supp. 1250, 1256–58 (S.D. Miss. 1988). When Defendant Aitken affirmatively commissioned a live musical score to accompany intimate footage of an infant nursing from her mother's breast in a secluded setting, it was entirely foreseeable that the depicted individual would suffer profound harm upon its public commercial exploitation.

Finally, physical presence in the state is not required to foresee injury or commit a tort within the forum where the tortious enterprise connects to Mississippi business operations. Barefield Workplace Solutions, Inc. v. Miller's of Columbia, Inc., 2018 WL 1770477 (S.D. Miss. 2018). Foreseeability is an intensely factual question reserved for a jury, and dismissal under Rule 12(b)(6) is improper.

V. CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Brenda Jane Paixao a/k/a Brenda Boring respectfully requests that this Honorable Court enter an Order DENYING Defendant Doug Aitken's Motion to Dismiss (Doc. 29) in its entirety, or, in the alternative, declaring the Motion MOOT upon the docketing of Plaintiff's Second Amended Complaint, and granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: October 22, 2026.

Respectfully submitted,

Brenda Boring, Pro Se

3901 West Esplanade Ave.

#640174

Kenner, LA 70064

Cellphone number (504) 500-2636

Email:brendajboring@gmail.com

CERTIFICATE OF SERVICE

Brenda Boring, hereby certify that on October 22, 2026, I served a true and correct copy of the foregoing Memorandum of Authorities in Opposition to Defendant Doug Aitken's Motion to Dismiss by placing the same in the United States Mail, First-Class postage prepaid, addressed to counsel of record as follows:

Lawrence J. Tucker, Jr., Esq.

Hickman, Goza & Spragins, PLLC

Post Office Drawer 668

Oxford, MS 38655-0668

Counsel for Defendant Doug Aitken

John R. Branson, Esq.

JWL International

311 Poplar View Lane West, Suite 2

Collierville, TN 38017

Counsel for Defendants William Eggleston, Jr., Winston Eggleston, and The Eggleston Artistic Trust

Brenda Boring, Pro Se Brenda Boring