IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

BRENDA BORING PLAINTIFF

VS. CAUSE NO.: 3:26-CV-169-MPM-JMV

WINSTON EGGLESTON, individually, and in his capacity as Director of the Eggleston Artistic Trust, and as Secretary and Treasurer of the Eggleston Artistic Trust; et al. DEFENDANTS

**REPLY BRIEF IN SUPPORT OF DEFENDANT DOUG AITKEN'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

COMES NOW, Defendant Doug Aitken, and, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), files this Reply Brief in Support of Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, for Failure to State a Claim Upon Which Relief Can Be Granted, as follows:

## I. PRELIMINARY STATEMENT

Without doubt, Brenda Boring, the pro se plaintiff in this matter, used a generative artificial intelligence model ("AI") to produce her Response in Opposition to Defendant Doug Aitken's Motion to Dismiss. Aitken filed his motion [28] and supporting brief [29] on October 20, 2026, and sent it to Plaintiff via U.S. Mail. A mere six days later, on October 26, 2026, Plaintiff filed a six-page response [33] and a 16-page supporting brief [34].

AI use was first suspected based on the rapid generation of this pro se response; however, the language and syntax used in Plaintiff's filings also felt somehow artificial. Among other unusual phrasings, the brief describes Aitken's alleged conduct in London in 2015 as "the foundational genesis and sonic core of an active, continuing commercial venture." [34] at p. 2. "Foundational genesis" and "sonic core" are neither terms of art nor, in this case, mere stylistic flourish—these phrases are evidence of an undisclosed AI author.

Aitken's suspicion of AI use grew when he realized that Plaintiff's filings, in addition to various statutes and rules, appear to cite 54 reported and unreported state and federal decisions, only 17 of which appear in his own brief. Research into each citation was conducted, and it effectively removed any doubt regarding AI use. Ten of Plaintiff's Westlaw number citations do not exist,[1] two exist but are associated with other decisions,[2] two are cited only as "Slip Copy,"[3] and two of her quotations do not appear in the cited decisions.[4]

All things considered, it appears to a near certainty that Plaintiff's filings are entirely AI-generated. The filings cite case law Plaintiff has likely never read, and contain arguments she likely did not write. As a result, Aitken is considering whether to invest in the preparation of a motion for sanctions pursuant to Fed. R. Civ. P. 11(c)(2). In the meantime, he offers this reply in support of his motion to dismiss. For the reasons previously given, and those that follow, Aitken is entitled to dismissal as a matter of law.

## II. ARGUMENT

### A. **The merits of Aitken's motion to dismiss must be decided based on the face of the First Amended Complaint, not new allegations made for the first time in Plaintiff's brief.**

---

[1] *Barefield Workplace Solutions, Inc. v. Miller's of Columbia, Inc.*, 2018 WL 1770477 (S.D. Miss. 2018); *The Retail Coach, LLC v. r360, LLC*, 2017 WL 3994799 (N.D. Miss. Sept. 8, 2017); *McKlemurry v. Thomas*, 2011 WL 1335323 (S.D. Miss. 2011); *Mize v. Morgan & Morgan, P.A.*, 2023 WL 3993809 (N.D. Miss. 2023); *Jones v. Phycon, Inc.*, 2022 WL 17091218 (N.D. Miss. Nov. 21, 2022); *Noone v. Ohio Nat'l Life Ins. Co.*, 2021 WL 3855523 (S.D. Miss. 2021); *Ovella v. B & C Const. & Equip., LLC*, 2011 WL 4551121 (S.D. Miss. 2011); *Leech v. Mississippi College*, 2023 WL 6162688 (S.D. Miss. 2023); *Rich v. Sheppard*, 2017 WL 1215718 (S.D. Miss. 2017); *Ray v. Dufresne Spencer Grp., LLC*, 2019 WL 2256740 (N.D. Miss. May 24, 2019). *See* [34] at pp. 4, 6, 9, 10, 12, 13, 15.

[2] *Griffin v. HSBC Mortg. Servs., Inc.*, 2016 WL 6892117 (N.D. Miss. Nov. 22, 2016); *Davis v. ING Fin. Advisers, LLC*, 2006 WL 8439976 (S.D. Miss. 2006). *See* [34] at pp. 11 and 12.

[3] *Higginbotham Ins. Agency, Inc. v. Smith*, Slip Copy (S.D. Miss. 2026); *UNO MAS, INC. v. Ruan Transport Corp.*, Slip Copy (N.D. Miss. 2026). *See* [34] at pp. 11, 12.

[4] Under controlling law "the tort is committed in Mississippi if any of its elements—or any part of an injury resulting from the tort—occurs in Mississippi." *See* [34] at p. 4 (citing *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012); *Smith v. Temco, Inc.*, 252 So.2d 212, 216 (Miss. 1971)); under Mississippi law, where a tort involves repeated wrongful acts, "the limitations period runs from the date of the last wrongful act, and each day creates a separate cause of action." *See* [34] at p. 6 (citing *Pierce v. Cook*, 992 So.2d 612, 626 (Miss. 2008)).

Plaintiff's First Amended Complaint ("FAC") specifically alleges that the film *Stranded in Canton* "was released commercially in 2005." [12] at ¶20. Aitken relied upon this allegation when preparing and filing his motion to dismiss. Apparently, Plaintiff now realizes it will be impossible to prove Aitken committed a tort against her in 2015 by screening a film that had already been commercially available for a decade. Rather than admitting this fact, and agreeing to Aitken's dismissal, Plaintiff chose to fabricate a new claim.

The new claim found in Plaintiff's brief in opposition to Aitken's motion to dismiss is that, in 2015, "Defendant Aitken selected William Eggleston's *unreleased* work Stranded in Canton for public presentation." [34] at p. 2 (emphasis added). Try as she might, Plaintiff cannot rely upon this sort of sleight of hand to avoid dismissal because "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) (citations omitted).

The operative allegation for purposes of the present motion to dismiss is that *Stranded in Canton* was commercially available to the public for 10 years before Aitken's alleged conduct occurred. Plaintiff cannot amend the FAC by making an entirely different allegation for the first time in her response; and Plaintiff has offered no support for her contention that Aitken can be held liable under any available tort theory for doing no more than selecting a decade-old film for screening at an arts festival in London and securing a musician to play along.

**B. Plaintiff disclaims any negligence-based theory and has failed to allege sufficient facts to suggest that Aitken may be liable under an intentional tort theory of recovery.**

Plaintiff's original Complaint, which is the pleading that was actually served on Aitken, alleges he committed some species of "personal tortious conduct." [1] at ¶7. This allegation was dropped in the FAC; however, that pleading continues to claim that unspecified "tortious acts or omissions" were committed "within Oxford, Mississippi" by Defendants Fat Possum Records,

LLC, Matthew Johnson, and Bruce Watson. [12] at ¶16. To avoid any confusion regarding the nature of the claims made against Aitken, a short "foreseeable plaintiff" argument was included in his motion to dismiss. [29] at pp. 16-17 (citing *Smith v. Minier*, 380 So.3d 889, 893 (Miss. 2024) (citing *Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339, 162 N.E. 99 (1928))). In response, Plaintiff has confirmed that no claim made against Aitken is based on an "accidental negligence" theory, and that her only path to a recovery is "intentional tort liability." [34] at p. 14.

In an attempt to convince this Court that Aitken may be liable under an intentional tort theory, Plaintiff argues "[c]reative professionals who participate in commercializing works depicting *identifiable individuals* are on reasonable legal notice that those individuals may assert claims …." *Id.* (emphasis added) (citing *Mitchell v. Random House*, 703 F.Supp. 1250, 1256-58 (S.D. Miss. 1988)). What Plaintiff fails to explain is how unattributed images of her as an infant in 1974 are "identifiable" as Brenda Boring. She argues "[a] plaintiff is legally identifiable if a reasonable viewer can discern that the plaintiff is depicted, considering the total context of the defendant's use," but points to no facts within the FAC to support her contention that a reasonable viewer would or could have identified her. [34] at p. 9. Rather than making her case, Plaintiff casts considerable doubt on this theory when arguing her "mother's spoken voice explicitly refers to the infant on camera by Plaintiff's personal name ('Jane') while being breastfed." [34] at p. 10. Plaintiff's name appears be "Brenda" not "Jane," so this is no help.

Even if baby Jane were somehow identifiable as adult Brenda Boring, Plaintiff would still be unable to explain how the facts alleged in the FAC suggest that Aitken intended to harm her when he selected *Stranded in Canton* for screening in 2015 and secured a musician to perform a live film score. "Intent is an emotional operation of the mind, and is usually shown by acts and declarations of the defendant coupled with facts and circumstances surrounding him at the time.

Defendant's intention is manifested largely by the things he does." *Sanderson Farms, Inc. v. McCullough*, 212 So.3d 69, 75-76 (Miss. 2017) (citation omitted). The "principal difference between an intentional tort and negligence is that 'an intentional tort is an act of intentional behavior designed to bring about the injury,' while a claim for negligence simply requires that the defendant failed to act as a reasonable person would under the same or similar circumstances, thereby breaching the applicable standard of care." *Id.* at 76 (citation omitted).

Since it is now clear that each and every claim made against Aitken is premised on his intent to cause injury to Plaintiff, it is reasonable to require a factual basis for the suggestion that Aitken knew or should have known that unattributed images of an infant in a commercially available film were unauthorized, non-consensual, and lacked "an entertainment release." [34] at p. 11. In addition, it is reasonable to require Plaintiff to identify sufficient facts to explain why "it was entirely foreseeable" to Aitken that baby Jane would grow up and "suffer profound harm" by having her likeness as an infant publically displayed at an arts festival in London. [34] at p. 14. Plaintiff offers no factual allegations in the FAC to support this bare legal conclusion nor can she, because she has no reason to believe Aitken ever intended to cause her any harm.

On October 27, 2026, the Eggleston Defendants filed a rebuttal [36] in support of their motion to dismiss arguing, among other things, that the Restatement (Second) of Torts and a persuasive decision out of Maine, *Nelson v. Maine Times*, 373 A.2d 1221, 1225 (Sup. Jud. Ct. of Maine, 1977), support the argument that a misappropriation claim cannot be maintained where use of a person's likeness is "incidental" to the work at issue. Aitken adopts and joins in these arguments by the Eggleston Defendants on grounds of judicial economy. *See, e.g., United States v. Jordan*, No. 3:18-CR-67-CWR-LGI-2, 2021 WL 1030996, at *3 (S.D. Miss. Mar. 17, 2021) (joinder may be in the interest of judicial economy where "fact-specific challenges" are not

made) (citing *United States v. Morgan*, 117 F.3d 849, 853 (5th Cir. 1997)). The arguments in question have general application to all defendants in this case, including Aitken, and need not be repeated verbatim to warrant consideration by the Court.

**C. Plaintiff disclaims general personal jurisdiction and has failed to allege sufficient facts to suggest that Aitken is subject to specific personal jurisdiction in the forum.**

As already set forth in Aitken's moving papers, bare legal conclusions and group pleading are the shifting sands upon which Plaintiff attempts to build her case. The Eggleston Defendants make a similar observation in their recently filed rebuttal when arguing: "In order to support her claim that the test for the Mississippi Long-Arm statute is satisfied, Plaintiff relies entirely on lumping all of the Defendants together …." [36] at p. 3. Since Plaintiff is incapable of raising new facts in her response which differ from those alleged in the FAC, Aitken will not repeat each of his arguments against personal jurisdiction in this reply.

Aitken does note, however, that the Eggleston Defendants have now filed a declaration [36-1] plainly establishing that no contract or partnership agreement exists between them and Fat Possum Records with regard to the licensing of the film *Stranded in Canton*. If the Eggleston Defendants cannot be lumped together with Fat Possum Records for purposes of establishing personal jurisdiction then Aitken certainly does not belong here either. His alleged conduct is remote and far removed from the 2024 album and concert tour, and the FAC fails to provide sufficiently individualized allegations to support the contention that he engaged in a conspiracy with anyone. *Martinez v. City of N. Richland Hills*, 846 F. App'x 238, 241 (5th Cir. 2021) ("Where a complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading.").

Plaintiff's attempt to use her response, rather than the FAC, to link Aitken to a broad civil conspiracy fails, not only because her efforts are belated but because her accusations amount to

bare legal conclusions without a factual foundation. The FAC does not, for example, provide any support for the allegation that "synchronized master compositions created at Aitken's direction were preserved, licensed, and funneled directly into Oxford, Mississippi …." [34] at p. 2. Nor does it provide any support for the allegation that Aitken is one of the "Defendants" who allegedly "continue to commercially stream Track 6 and derive enterprise revenues from Plaintiff's likeness without consent." *Id.* at p. 3. Plaintiff has not and cannot show that Aitken is deriving any economic value today from his alleged conduct in 2015, and merely stating in conclusion fashion that the "Mississippi overt acts" of Fat Possum Records "are legally attributable to Defendant Aitken" does not make it so. [34] at p. 5.

**D. <u>Plaintiff's claims are barred by the relevant statutes of limitation, and are not saved by the discovery rule, the continuing tort doctrine, or republication rules.</u>**

Aitken addressed the discovery rule in his moving papers, and Plaintiff's response adds nothing to the analysis. Rather than directly addressing his arguments regarding Mississippi's limited application of the discovery rule in certain libel suits, Plaintiff merely repeats the same conclusory and self-serving allegation made in the FAC, i.e., that Aitken's alleged conduct in 2015 was "inherently undiscoverable through ordinary diligence" because it occurred at an overseas arts festival. [34] at p. 6. In fact, it is apparent from the FAC that Aitken's alleged conduct was readily discoverable "in June 2026" once Plaintiff began "independently researching the timeline of when Defendant J Spaceman and related entities began profiting from the film." [12] at ¶30. As a result, the discovery rule will not save her claims.

The continuing tort doctrine was not previously raised but, like the discovery rule, it cannot save Plaintiff's claims. The factual allegations made against Aitken in the FAC are plainly limited to a single overseas arts festival in 2015. [12] at ¶29. There is no sufficiently individualized allegation in the FAC to support Plaintiff's current contention that Aitken

personally engaged in "repeated wrongful acts forming a continuous course of conduct …." [34] at p. 6. Aitken's allegedly wrongful conduct began and ended in 2015, and the FAC does not provide any factual support for the allegation that a live score performed in London over a decade ago was tortuously "preserved, licensed, and channeled directly into an active commercial enterprise" with Fat Possum Records in 2024 for the intended purpose of causing harm to an unidentified infant seen briefly in one of its segments. [34] at p. 7.

The alleged republications, reissues, and/or rebroadcasts mentioned in Plaintiff's response, [34] at p. 8, are not attributed to Aitken in the FAC. His allegedly wrongful conduct began and ended in 2015. The allegation that *Music for William Eggleston's Stranded in Canton* was "mass-manufactured" in late 2024 is, according to the FAC, attributable to Fat Possum Records. Plaintiff only associates Aitken with this activity by resorting to group pleading which, as already discussed, fails to satisfy the requirements of notice pleading.

Plaintiff takes an odd tack by relying on group pleading in the FAC then arguing in her response that "[c]ollective treatment in dispositive motions is inappropriate where the record demonstrates that defendants did not engage in unified acts as indistinguishable entities." [34] at p. 9. This AI-generated sentence was apparently meant to dissuade the Court from considering Aitken's adoption of arguments made by the Eggleston Defendants, but it proves Aitken's point. Even the AI-author of Plaintiff's response can see that the FAC fails to support the contention that the defendants acted in a unified fashion such that collective treatment would be justified.

## III. CONCLUSION

Plaintiff's response is an AI-generated argument replete with conclusory statements, overly-broad generalizations, and fabricated case citations. It purports to cite and analyze case law Plaintiff has likely never read, and almost certainly contains arguments she did not write.

While this does not necessarily mean that Aitken's position is right and Plaintiff's position is wrong, it does represent a significant move into uncharted waters.

Pro se parties have typically been shown some degree of leniency; however they have never been permitted to make baseless filings, putting "the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398, 110 S. Ct. 2447, 2457, 110 L. Ed. 2d 359 (1990). Indeed, proceeding pro se offers "no impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

Whether this Court views Plaintiff's response as sufficiently infirm to warrant *sua sponte* action remains to be seen. If not, Aitken will need to weigh the cost of paying his attorney to prepare a Rule 11 motion against the unlikelihood of any recovery from a plaintiff who has already secured *in forma pauperis* status in this case. Either way, Aitken is entitled to dismissal. The FAC does not support personal jurisdiction in the forum and, as a matter of law, it fails to state a claim against him upon which relief can be granted.

WHEREFORE, PREMISES CONSIDERED, Defendant Doug Aitken respectfully asks the Court to grant the relief requested in his previously filed motion to dismiss.

Respectfully submitted,

DOUG AITKEN

*/s/ Lawrence J. Tucker, Jr.*
LAWRENCE J. TUCKER, JR., MSB # 100869
Hickman, Goza & Spragins, PLLC
Post Office Drawer 668
Oxford, MS 38655-0668
(662) 234-4000 (telephone)
(662) 234-2000 (facsimile)
ltucker@hickmanlaw.com

## CERTIFICATE OF SERVICE

I, Lawrence J. Tucker, Jr. of Hickman, Goza & Spragins, PLLC, Oxford, Mississippi, do hereby certify that I have, this date, filed the above with the Court via the ECF system, which electronically delivered a copy to all counsel of record, including the following:

John R. Branson
JWL International
311 Poplar View Lane West
Suite No. 2
Collierville, TN 38017
(901) 569-1175
jrb@jwlinternational.com

Taylor H. Webb
Tollison & Webb P.A.
103 N. Lamar Blvd., Suite 201
P.O. Box 1216
Oxford, MS 38655
(662) 234-7070 (telephone)
(662) 234-7095 (facsimile)
taylor@tollisonlaw.com

And a copy has been mailed to the following *pro se* party:

Brenda Boring
3901 W. Esplanade Ave.
#640174
Kenner, LA 70064

DATE: November 2, 2026

*/s/ Lawrence J. Tucker, Jr.*
LAWRENCE J. TUCKER, JR.